UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff,<br><br>　vs.<br><br>JAMES DENNIS EVANS,<br><br>　　　　　　Defendant. | NO.  CR-02-126-JLQ<br><br>MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION TO VACATE CONVICTION AND DISMISS INDICTMENT WITH PREJUDICE |

　　　Before the court is Defendant Evans' Motion For Judgment of Acquittal or in the Alternative For A New Trial, heard telephonically on March 7, 2007.  Richard D. Wall appeared on behalf of Defendant James Dennis Evans.  Assistant United States Attorney Stephanie Whitaker appeared on behalf of the Plaintiff. This case is a companion case to that of *United States v. Koenig*, CR-02-127-JLQ. In view of the recent discovery of allegedly withheld impeachment evidence concerning the principal witness against this Defendant, there is no contention by the Government that the Defendant's Motion is not timely.

　　　Having reviewed the record, heard argument of counsel, and being fully advised in this matter, **It Is Hereby Ordered** that  Defendant's Motion For Judgment Of Acquittal or in the Alternative For a New Trial is **Denied** for the following reasons.

## I. BACKGROUND

　　　The Defendant was indicted on May 7, 2002, on a charge of possession of cocaine base with intent to distribute.  On the present Motion To Dismiss, the Defendant relies upon  "outrageous behavior" of the Government based upon its failure to furnish alleged impeachment information concerning Government witness David Palmer as required by *Brady v. Maryland*, 373 U.S. 83 (1963).

　　　The withholding of this *Brady* information concerning Palmer only came to light in the year 2006.  As found by Judge Edward Shea of this court in his Memorandum Opinion of January 16, 2007, in *United States v. Heit*, E. D. Wash. No. CR-05-6028-EFS (C.R.

255), on June 6, 2002, some two months prior to the trial of Mr. Evans, Lt. Chan Bailey of the Spokane Police Department Drug Task Force called federal Drug Enforcement Agent Shelby Smith and informed Agent Smith that the City and County of Spokane would no longer be utilizing David Palmer as a "confidential source" in drug buys because he had been deemed to be "unreliable." Judge Shea found Lt. Bailey's testimony to be credible.

Apparently, Agent Smith did not communicate this "unreliable" information from Lt. Bailey to Assistant United States Attorney Earl Hicks, then in charge of the prosecution of this and its related cases. On June 19, 2002, Mr. Hicks forwarded a letter to counsel for all Defendants in these cases setting forth various *Brady* information concerning witness Palmer and also witness Janie Arambula. The information concerning Mr. Palmer's alleged "unreliability" was not set forth in Mr. Hicks' June 19, 2002 letter. Mr. Hicks was not involved in the actual trial of the case.

The combined jury trials of James Evans, Gabrielle Koenig, and Elvis Singh commenced on August 12, 2002. Assistant United States Attorneys Aine Ahmed and Stephanie Whitaker represented the Government. Two informants, David Palmer and Janie Arambula, testified on behalf of the Government along with other witnesses. Mr. Palmer's testimony was that Mr. Evans had given directions to Palmer and one Joseph Davis to drive to the residence at E. 918 Empire in Spokane, Washington for the purpose of purchasing crack cocaine with the $1,000 Palmer would then give them. Palmer testified that he gave Evans and Davis the $1,000 who then entered the residence while Palmer remained in the car and they returned with the crack cocaine. Palmer testified that upon the return to his car he asked Evans and Davis if the agreed amount of cocaine was there and Evans responded that the amount was correct "because he weighed it right in my face." All of Palmer's conversations with Evans and Davis were recorded and played to the jury. This was the sole testimony of Palmer. The evidence against Mr. Evans included this testimony, the fact that Mr. Evans was apparently a resident at E. 918 Empire, and that he was found there at the time of the execution of a search warrant of those premises on or about April 25, 2002 when drugs and drug dealing paraphernalia were found,

although Mr. Evans was not directly connected thereto.

The court permitted extensive cross-examination of Palmer including issues such as any past or present drug use, payment for work as an informant, sources of income, and the failure to file income tax returns. The court did preclude examination as to Palmer's alleged sexual assault and/or kidnapping conviction in 1973 as being stale and not probative of Palmer's present credibility. During a recess in that cross-examination, attorney Frank Cikutovich, representing James Evans, informed the court that he had concerns as to whether the Government had fully disclosed all *Brady* material concerning Palmer to counsel for the Defendants and requested that the court review Palmer's D.E.A. file for *Brady* material. The court rejected that request with the statement that it was the responsibility of the United States Attorney's office, and not that of the court, to review such materials and disclose any *Brady* information concerning a witness.

Apparently, based upon the request of Mr. Cikutovich, Agent Smith brought Palmer's D.E.A. file to the office of the United States Attorney where it was reviewed for *Brady* information by Assistant United States Attorney Tom Rice.  While Lt. Bailey had prepared a Memorandum as to the allegations that Palmer was "unreliable," he had not sent a copy of that Memorandum to Agent Smith and such a Memorandum was not contained in Palmer's file at the time it was inspected by Mr. Rice. Mr. Rice found no undisclosed *Brady* type information in Palmer's D.E.A. file and he so advised the Government trial attorneys.  There is no contention that any such information was in the file.  There also is no evidence Agent Smith informed Mr. Rice of the "unreliable" conversation with Lt. Bailey.  However, there is also a lack of evidence as to whether the Government attorneys involved in these cases made inquiry of the Government agents as to any *Brady* information within the agents' personal knowledge concerning the credibility of the Government witnesses, as opposed to just an inspection of what was in Palmer's file.  The cross-examination of witness Palmer was concluded without counsel for the Defendants being informed that Palmer was no longer being used by the City and County of Spokane because of his alleged "unreliability."

At the trial of Mr. Evans, Ms. Koenig, and Mr. Singh, the court allowed extensive cross-examination of Mr. Palmer as stated, *supra*, and in Jury Instruction No. 23 informed the jury that the testimony of an informant should be examined with greater care than the testimony of a witness not motivated by the payment of money for his or her work. All of the Defendants were convicted of the cocaine base charges and Defendants Evans and Koenig were both sentenced to mandatory minimum terms of five years. Mr. Evans has completed his prison term and is now on Supervised Release.

After Agent Smith had been informed that the City and County of Spokane were no longer using Palmer, the D.E.A. agents continued to use Palmer as an informant in the purchase of illegal drugs, including the *Heit* investigation. By the time of the prosecution of the *Heit* case in 2006 in this district before Judge Shea, the D.E.A. in the Spokane area had become part of the Spokane Regional Task Force, including detectives from the City and County of Spokane police and sheriff's departments. The "unreliable" Memo was then placed in Palmer's file and during the prosecution of the *Heit* case, counsel for the Government, Ms. Whitaker, upon learning of the Memo, disclosed it to defense counsel therein who in turn disclosed its existence to counsel in the case *sub judice*.

In the *Heit* case, Judge Shea held extensive pre-trial evidentiary hearings on the Defendant's Motion To Dismiss based on the Government's use of Mr. Palmer. Judge Shea made extensive findings set forth in his January 16, 2007, post-trial Order (C.R. 255) and while being somewhat critical of the Government's conduct, denied the Motion To Dismiss for outrageous behavior. Judge Shea also precluded the use of the Lt. Bailey Memo in the cross-examination of David Palmer during the *Heit* trial. The Government contends that such a ruling would therefore have been made by this judge in the 2002 trial of this case, had the Bailey Memo and information been in the hands of defense counsel. In the joint argument on the Evans and Koenig motions, counsel for the Defendants pointed out that the scope of cross-examination is a matter within the discretion of the trial judge and that this court might have ruled contrary to Judge Shea and allowed the cross-examination of Mr. Palmer concerning his alleged "unreliability." The court makes no

Memorandum Opinion –4

determination on this evidentiary issue, but assumes in this Opinion that counsel's suggestion is correct, solely for the purposes of this Opinion.

## II.  DISCUSSION

The Government's argument throughout its briefing and at oral argument on this Motion that it did not have the troubling "unreliable" information about Mr. Palmer at the time of Mr. Evans' trial is  without merit.  Ms. Whitaker's briefs repeatedly state that the information was not within the possession of the "Government," apparently referring to the office of the United States Attorney. It is not disputed that United States Drug Enforcement Agency Special Agent Shelby Smith had been informed of the fact of and the basis for the "unreliable" tag placed on Government witness  Palmer well before the trial of this matter. It appears that no member of the United States Attorney office asked Agent Smith if he had any non-file *Brady* information about the informant Palmer and Agent Smith did not voluntarily share any such information.  It is the opinion of this court that in fulfilling its *Brady* obligations, counsel for the Government must inquire of the Government agents as to any *Brady* information within the knowledge of the agents.

In *United States v. Henthorn,* 931 F.2d 29 (9th Cir. 1990), the court clearly held that the prosecutor must obtain information known by other agents of the government and turn over any *Brady* material from that information to the defense or present it to the court for a ruling as to whether it is  *Brady* material . *See also United States v. Blanco,* 392 F.3d 382 (9th Cir. 2004).

> Because the prosecution is in a unique position to obtain information known to other agents of the government, it may not be excused from disclosing what it does not know but could have learned. . . A prosecutor's duty under *Brady* necessarily requires the cooperation of other government agents who might possess *Brady* material.  Exculpatory evidence cannot be kept out of the hands of the defense just because the prosecutor does not have it, where an investigating agency does.  That would undermine *Brady* by allowing the investigating agency to prevent production by keeping a report out of the prosecutor's hands until the agency decided the prosecutor ought to have it, and, by allowing the prosecutor to tell the investigators not to give him certain materials unless he asked for them.

*Id.* at 394.

It is clear that the derogatory information forming the basis for Mr. Palmer

Memorandum Opinion –5

being classified as "unreliable" was known to an agent of the United States Government and was never revealed to defense counsel, who had specifically asked for any *Brady* information and was so ordered by this court.  Therefore, there is no basis whatsoever for the Government's argument that the information was not within the knowledge of the "Government."   This court firmly believes that the "unreliable" information concerning Palmer was clearly *Brady* information that the Government and its agents, be they attorneys or otherwise, were obligated to reveal.  This court also finds that there is an obligation on the part of the attorneys prosecuting a case, to inquire of the Government agents with knowledge of the case and/or with knowledge of the Government witnesses as to any knowledge of *Brady* type material concerning the case or witness(es).

   If the information about Palmer had been revealed to defense counsel, undoubtedly they would have attempted to use it to cross-examine Palmer or to call as witnesses those who made the "unreliability" determination to challenge the reputation of Palmer for truth and veracity pursuant to F. R. Evid. 608(a).  However, assuming, without ruling, that the court would have permitted defense counsel to so proceed and that witnesses would have testified as to the poor reputation of Palmer for truth and veracity, in the actual trial, the jury had sufficient information concerning Palmer's background and circumstances to allow a reasoned judgment as to his credibility. Certainly, the testimony of Mr. Palmer, supported by the tape recordings, if believed, along with the connection of Mr. Evans to the house used for drug transactions, was sufficient for the jury to find that Mr. Evans participated in the controlled buy of cocaine base for Palmer on April 9, 2002.

   In determining if a *Brady* violation warrants appropriate post-trial action by the court, the court must determine whether if the withheld information had been furnished as required, a "reasonable probability" exists that the result of the proceeding would have been different. *Kyles v. Whitley*, 115 S. Ct. 1566 (1995); *United States v. Bagley*, 473 U.S. 667(1985). In this case the court is unable to so find.  The court allowed defense counsel, and in particular, counsel for Mr. Evans,  substantial latitude in examining Palmer as to his background and any possible motives for testifying falsely, such as

Memorandum Opinion –6

monetary payments from the Government.

In analyzing if a Defendant has been deprived of his Sixth Amendment rights through restriction on cross-examination by the court or by reason of the Government having withheld *Brady* material concerning the witness, when the withheld information "relates to impeachment evidence, the test . . . is whether the jury had in its possession sufficient information to appraise the biases and motivations of the witness." *United States v. Bleckner*, 601 F. 2d 382, 395 (9th Cir. 1979). It is also established that "the defendant's right to attack the witness's general credibility enjoys less protection than his right to develop the witness's bias." *Reiger v. Christensen*, 789 F. 2d 1425, 1433 (9th Cir.1986); *Evans v. Lewis*, 855 F. 2d 631, 634 (9th Cir. 1988). Based upon the extensive cross-examination of Government witness Palmer, even without the withheld *Brady* "unreliable" material, the jury had ample information concerning Palmer to determine his credibility and biases, particularly in view of the court's Instruction No. 23.

While the court is concerned by what might be described as a cavalier attitude on the part of the Government to afford Mr. Evans due process pursuant to *Brady,* the court is unable to find that a reasonable probability exists that the jury would not have convicted Mr. Evans had the "unreliable" information concerning Mr. Palmer been furnished the Defendant and its use permitted by the court. Likewise, the court finds that the *Brady* violation did not have a substantial and injurious effect or influence in determining the jury's verdict. *Brecht v. Abrahamson*, 507 U.S. 619,623 (1993). Therefore, Mr. Evans' Motion For Judgment Of Acquittal or in the Alternative For a New Trial must be and is **Denied.**

**IT IS SO ORDERED.** The Clerk is directed to enter this Opinion and Order, forward copies to counsel, and reclose this file.

Dated this 26th day of March, 2007.

s/ Justin L. Quackenbush
JUSTIN L. QUACKENBUSH
SENIOR UNITED STATES DISTRICT JUDGE